[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is not a marriage made in heaven.
The court finds that both parties were abusive to each other, physically and verbally. Based on the evidence presented, the court finds the plaintiff was physically and verbally assaultive to the defendant and the defendant was physically assaultive to the plaintiff.
Neither party has come into this court of equity with clean hands. Both parties lied on their marriage application. Both parties filed false federal income tax returns. The vandalism done to the defendant's scrapbooks were childish, uncivilized and vindictive.
The tape the court listened to in court was nothing but CT Page 2337 wrangling, shouting and arguing between two people who should have known better and one of whom sounded inebriated or intoxicated.
Both parties conspired to concoct a scheme to save the plaintiff a capital tax gain payment. In fact, the plaintiff had not yet sold her Plymouth real estate on the date of December 23, 1995 when she took title to the Shelton property and there was no capital gains tax as of that date. The plaintiff's rendition of the transaction — a payoff of the defendant's existing mortgage, a mortgage back to the defendant and an "agreement" to put additional monies into the home by way of remodeling and repairs — had some semblance of credibility.
It is hard to believe that a person such as the defendant, who has amassed an estate in excess of one million dollars, was so unaware and had no knowledge as to the mechanics of transfer of his real estate to his future wife.
The court finds that the plaintiff put a minimum of $111,000, her proceeds from the sale of her Plymouth property, into the marital residence in Shelton. She also paid property taxes and insurance on the property and paid off the first mortgage of approximately $62,000. She probably contributed in excess of $170,000.
The defendant was unemployed for approximately two years. The plaintiff worked throughout the marriage. The defendant's assets increased substantially during the marriage without any additional funds being put in by the defendant. The plaintiff estimated the defendant's assets increased by approximately $400,000. The defendant has assets of approximately $1.3 million plus the fire insurance proceeds from his Bridgeport property.
The defendant underestimated some of his assets on his financial affidavit. While the defendant's assets appreciated over time, the plaintiff's assets increased the value of the marital home.
The court has reviewed the tapes submitted into evidence by the defendant. Although the tapes may be self-serving as far as the defendant is concerned, the tapes bear out the truth of some of the defendant's allegations with respect to the conduct of the plaintiff and her verbal abuse of the defendant. The tapes portray the plaintiff as the aggressor, nasty and mean spirited CT Page 2338 and inflicting verbal abuse upon the defendant and his family. The plaintiff sounded inebriated on some of the tapes.
The letter of the plaintiff dated July 16, 1997 (Defendant's Exhibit A) portrays a far different person than the one heard on the tapes (Defendant's Exhibit C).
The court points out that had the defendant been taped without his knowledge, one wonders what would have been heard!
The defendant claims he entered into the marriage contract with the plaintiff based on her representation that she could be married in the Catholic Church. In fact, the plaintiff had been previously marriage in the Church and had divorced her first husband, making her non-eligible (without an annulment) to marry again in the Catholic Church. Fraudulent contract is a ground for the granting of a dissolution rather than an annulment. The defendant found out this information in the Fall of 1998. He did nothing and the parties continued to live together until June 1999 when the plaintiff commenced this dissolution action.
It would not make much sense for the defendant to tell the plaintiff he would only marry her in his church and then tell her to lie on the marriage application and indicate she had not been previously married as claimed by the plaintiff.
If this were the only ground alleged, the defendant might be entitled to a dissolution on the grounds of fraudulent contract. The defendant has other avenues of remedies through his church if he desires to obtain an annulment of this marriage. The defendant claims he does not believe in divorce although there was a decree of dissolution entered dissolving his second marriage which was performed outside of his church.
There was much testimony concerning the incident of October 31, 1998 in which the plaintiff's nose was fractured. The plaintiff was constant in her accusation that the defendant struck her. Her accusation is in the hospital records, in the doctor's history and on the tapes. The defendant never asked the plaintiff "what happened?" when he saw her bloodied face. Whether the defendant struck out in anger, jest, unwittingly or accidentally, or in self defense, the only plausible explanation is that the defendant was the cause of the trauma. Notwithstanding this brutal attack, as characterized by the plaintiff, the plaintiff continued to reside with the defendant CT Page 2339 in the marital home until the following June. Their life together thereafter is reflected in the tapes.
In 1996, the plaintiff developed cancer in her bladder. She has had two operations to remove tumors from the bladder followed by Chemotherapy treatment. She is checked by the Doctor every three months for the removal of tumors and catheterization. To date, the cancer has been controlled and the plaintiff is optimistic about her recovery. The plaintiff testified she feels she has a normal life expectancy. The plaintiff, who is 52 years of age, is presently gainfully employed and is working two jobs.
The defendant is 62 years of age and is in good health. He is presently employed by Met Life grossing $200. per week.
The plaintiff, who has two Masters Degrees, is presently earning approximately $680. net per week. Although one of her jobs will terminate in June 2000, the plaintiff has substantial skills to obtain other employment as she has done in the past. She has a solid work history.
No useful purpose would be served by a review of all the evidence presented in this four day trial. The Court has highlighted some of the major issues presented. The Court has reviewed all the exhibits, tapes and the testimony of the parties. The Court had the opportunity to observe the demeanor and candor of the parties. The court does not reward anyone, nor does the court punish anyone, in dividing the marital assets. The court intends to make a fair, just and equitable distribution of the marital assets.
Both parties have contributed to the breakdown of the marital relationship. The parties started off their married life by filing a false marriage application. Neither party has come into this court of equity with clean hands.
The parties were married on December 23, 1995 in Bridgeport, Connecticut. They have both resided in this state since that time. There are no minor children issue of this marriage.
The evidence presented at trial has clearly established the allegation that the marriage has broken down irretrievably. Judgment may be entered dissolving the marriage.
The Court has carefully considered the statutory criteria as CT Page 2340 set forth in Sections 46b-81, 46b-82 and 46b-62 in reaching the decisions reflected in the orders that follow:
REAL ESTATE
The plaintiff shall convey her right, title and interest in the real estate at 51 Applewood Drive, Shelton, Connecticut to the defendant. The existing mortgage on the property, from the plaintiff to the defendant, shall be immediately released.
The plaintiff shall vacate the premises within three months of date. The premises shall be left in broom clean condition. The plaintiff shall commit no waste to the premises; the plaintiff shall not destroy, deface, tear or vandalize the property while she is occupying the marital home.
The plaintiff shall be entitled to exclusive use of the premises until she vacates the premises within three months of date.
The plaintiff shall be responsible for all utilities, Homeowner's Insurance and necessary and reasonable repairs while she occupies the premises.
PERSONAL PROPERTY
1. The plaintiff shall retain all of the accounts which were in her name prior to the marriage and she shall be entitled to all the assets as reflected on her Financial Affidavit, except as disposed of herein.
2. The defendant shall retain all of the accounts which were in his name prior to the marriage. He shall be entitled to all of the assets reflected on his Financial Affidavit, except as disposed of herein.
3. The plaintiff shall be entitled to one half of the Hartford Life (Putnam) Account.
4. The plaintiff shall be entitled to the personal property at the home which belonged to her prior to the marriage.
5. The defendant shall be entitled to the personal property at the home which belonged to him prior to the marriage including his books, records and financial documents. CT Page 2341
6. All the remaining personal property at the home shall be divided between the parties as they shall agree. If the parties are unable to agree, they are referred to Family Relations for mediation and if this is unsuccessful the parties shall return to court for a hearing and orders thereon.
7. The plaintiff shall be entitled to the CompuWriter Inc. business and the defendant shall transfer any and all interest he has in CompuWriter, Inc. to the plaintiff.
ALIMONY
1. The plaintiff has two Masters Degrees. She has excellent credentials. The plaintiff has worked her entire adult life. She has a solid work history. The plaintiff has demonstrated an ability to obtain employment and to be gainfully employed. No alimony is awarded to the plaintiff.
2. The plaintiff's request for retroactive alimony pendente lite is denied.
PROPERTY SETTLEMENT
By way of lump sum property settlement, the defendant shall pay to the plaintiff the sum of $285,000. payable as follows:
1. $200,000. to be paid to the plaintiff within 90 days of date when the plaintiff vacates the marital home;
2. The $85,000. balance shall be paid to the plaintiff 30 days thereafter.
COUNSEL FEES
1. The plaintiff is awarded counsel fees in the amount of $5,000. to be paid within 60 days of date.
2. The plaintiff is further awarded $2000. toward her expert's fees.
Coppeto, J. CT Page 2342